JUDGE'S COPY



FILED
HARRISBURG

MAY 24 2001

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SYDNEY BRADSHAW,
    Petitioner     :     No. 1:CV-01-0756
          :
    v.     :     (Judge Caldwell)
          :
IMMIGRATION AND NATURALIZATION     :
SERVICE,
    Respondent     :

### RESPONSE TO THE WRIT OF HABEAS CORPUS

#### Introduction

This is a habeas corpus matter brought by an alien, Sydney Bradshaw, a native and citizen of Guyana, who is in the custody of the Immigration and Naturalization Service ("INS"). Bradshaw is challenging a final order of removal entered against him. Although the habeas petition is confusing, it appears that Bradshaw is alleging that his final order of removal is invalid because: (1) he has derived United States citizenship through the Child Citizenship Act of 2000; (2) he should not have been ordered removed based upon a the failure of officials to advise him of his consular rights at the time of his arrest by the Burlington police; (3) his order of removal is based upon a set of unconstitutional statutes; and (4) he is entitled to cancellation of removal or some form of discretionary relief.

Bradshaw filed his habeas petition on April 4, 2001, and on May 7, 2001, the Court ordered the habeas petition served on the INS. As explained below, the habeas petition should be denied in that the order of removal was properly entered, Bradshaw is not entitled to withholding of removal, Bradshaw cannot collaterally challenge his criminal conviction in challenging an order of removal, and Bradshaw otherwise has not established any violation of his constitutional rights.

### Statement of Facts

Bradshaw is a citizen and native of Guyana who entered the United States in 1964. Exh. 1, ¶¶4-5 (Notice to Appear); Exh. 2, at 15-16 (Immigration Transcript ("Tr.")).

On February 9, 1998, Bradshaw was convicted of aggravated assault in Burlington, Vermont. Bradshaw received an 8 months to 4 years sentence; Bradshaw served 8 months, with the remainder of the sentence being suspended while Bradshaw was on probation. Exh. 1, ¶7; Exh. 3 (IJ Order). As a result, the INS placed Bradshaw in removal proceedings in June 1998 and charged him with being removable under 8 U.S.C. §1227(a)(2)(A)(iii). Exh. 1.

Bradshaw's immigration hearing was continued four times between June or July 1998 and September 15, 1998, so that Bradshaw could attempt to obtain representation, to establish United States citizenship, and to demonstrate that he did not have a criminal conviction. Exh. 2 (Tr. at 2-26). As to the question of

citizenship, however, Bradshaw ultimately admitted that he was **not** a United States citizen and that he **was** a citizen and native of Guyana. Id. (Tr. at 15).

Although Bradshaw denied having a criminal conviction, the immigration judge found that Bradshaw had been convicted and that this conviction made Bradshaw removable. Id. (Tr. at 24-27); Exh. 3. On September 15, 1998, therefore, the immigration judge issued an order of removal against Bradshaw. In that order, the immigration judge found that Bradshaw was statutorily ineligible for cancellation of removal and, because he did not fear persecution if returned to Guyana, that Bradshaw was not applying for withholding of removal. Nor was Bradshaw eligible for political asylum. Exh. 3, at 4.

On September 24, 1998, Bradshaw filed a motion to reopen his immigration proceedings alleging that his country of origin was British Guiana, not Guyana, and that the "Guyannese" embassy indicated he would be imprisoned and tortured daily for the embarrassment of having no family in Guyana. The immigration judge denied the motion to reopen on October 2, 1998, concluding that British Guiana was the same place as Guyana and finding that Bradshaw had offered no evidence to support his belief that he would be imprisoned and tortured. Exh. 4 (IJ Order).

On October 16, 1998, Bradshaw filed a second motion to reopen. This motion claimed that he should be permitted to apply

3

for withholding of removal due to some unnamed medication he allegedly needed to live and because his medical condition made him a member of a social group whose life would be threatened upon removal. The immigration judge denied the motion on October 29, 1998, again due to Bradshaw's failure to provide any supporting evidence. Exh. 5.

On December 23, 1998, Bradshaw filed a third motion to reopen. This motion again requested the ability to apply for withholding of removal because Bradshaw claimed to suffer from severe maladies that required medication and several doctors' care, with him being unable to obtain his medicine, or employment, if removed to Guyana. On January 14, 1999, the immigration judge denied the motion to reopen as untimely and as repetitive under 8 C.F.R. §3.23(b). Alternatively, the immigration judge denied the motion on the merits due to Bradshaw's failure to offer supporting evidence or to establish a prima facie case of eligibility for withholding of removal. Exh. 6.

In the interim, on October 23, 1998, Bradshaw appealed the order of removal to the Board of Immigration Appeals ("BIA"), which appeal apparently was not entered into the BIA's data base for a period of time. Exh. 7, at 1 (BIA order). The BIA, thus, vacated the immigration judge's October 29, 1998 and January 14, 1999 orders denying Bradshaw's second and third motions to reopen due to the immigration judge not having jurisdiction of them

4

following Bradshaw's appeal tot the BIA. Otherwise, in a June 23, 1999 order, the BIA upheld the immigration judge's order of removal and his denial of the first motion to reopen. Exh. 7, at 1-2 & n.2.

In upholding the removal order, the BIA first found that Bradshaw had failed to articulate how his due process rights were violated, with the immigration judge having given Bradshaw an opportunity to obtain representation and to refute the charges. Second, Bradshaw had been given an opportunity to establish derivative citizenship. Since Bradshaw subsequently had admitted at the hearing that he was not a United States citizen, the BIA concluded that Bradshaw had not been denied due process on the issue of citizenship. Third, the BIA observed that Bradshaw had failed to offer any evidence that his conviction had been or would be vacated although he had been given the opportunity to do so. Fourth, the BIA recognized that Guyana was the equivalent of British Guiana such that the removal hearing was not "retaliatory" as alleged by Bradshaw. Last, the BIA found that Bradshaw had failed to produce any evidence to support his claim of alleged persecution. Exh. 7.

Concluding that Bradshaw's appeal bordered on the frivolous, the BIA upheld the order of removal. Exh. 7 (June 23, 1999 BIA order). Approximately two years later, Bradshaw filed this habeas petition.

5

## QUESTION PRESENTED

Should Bradshaw's petition for a writ of habeas corpus be denied in that Bradshaw does not have derivative United States citizenship, the order of removal was properly entered against Bradshaw, Bradshaw is not entitled to withholding of removal, Bradshaw cannot now raise a Vienna Convention "consular notification" claim, and Bradshaw otherwise has not established any violation of his constitutional rights?

## ARGUMENT

**BRADSHAW'S PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED IN THAT BRADSHAW DOES NOT HAVE DERIVATIVE UNITED STATES CITIZENSHIP, THE ORDER OF REMOVAL WAS PROPERLY ENTERED AGAINST BRADSHAW, BRADSHAW IS NOT ENTITLED TO WITHHOLDING OF REMOVAL, BRADSHAW CANNOT NOW RAISE A VIENNA CONVENTION "CONSULAR NOTIFICATION" CLAIM, AND BRADSHAW OTHERWISE HAS NOT ESTABLISHED ANY VIOLATION OF HIS CONSTITUTIONAL RIGHTS.**

In his habeas petition, Bradshaw primarily claims that he has derived United States citizenship such that he should not be removed from the United States. Otherwise, Bradshaw makes a number of general claims, without articulating any basis for them, as to why the order of removal should be overturned or discretionary relief from removal should be granted. We address these claims seriatim.

1. **Derivative Citizenship**

Bradshaw claims that he has derived United States citizenship through the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (Oct. 30, 2000). The Child Citizenship Act, which became effective on February 27, 2001, revises the

6

provisions by which children born outside the United States acquire United States citizenship by amending sections 1431 and 1433 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. §§1431, 1433, and by repealing §1432 of the INA, 8 U.S.C. §1432.[1]  See Child Citizenship Act of 2000, §§101-103.

As amended, section 1431 provides that a child born outside of the United States automatically becomes a citizen of the United States when <u>all</u> of the following conditions have been fulfilled:

(1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

(2) The child is under the age of eighteen years.

(3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

8 U.S.C. §1431.

The provisions of the Child Citizenship Act apply <u>only</u> to "individuals who satisfy the requirements of section 320 [§1431] or 322 [§1433] of the Immigration and Nationality Act, as in effect on [February 27, 2001]." Child Citizenship Act of 2000, §104.[2]  Thus,

---

[1] Although repealed on February 27, 2001, 8 U.S.C. §1432 remains in effect for aliens who fulfilled the conditions stated in that section before that date.

[2] That section provides:

The amendments made by this title shall take effect 120 days after the date of the enactment of this Act and

7

by its express terms, the amended section 1431 applies only to persons who, <u>on February 27, 2001</u>, (1) have at least one citizen parent, (2) are <u>under age 18</u>, and (3) are lawful permanent residents residing in the United States in the legal and physical custody of their citizen parent(s).

Bradshaw, who admits that he arrived in the United States in 1964 at the "tender age of eleven," Petition, at 2,[3] clearly was not under the age of eighteen as of February 27, 2001. Thus, Bradshaw is not covered by the Child Citizenship Act of 2000 and his claim of derivative United States citizenship under that statute must fail.

2.    **The INA, as amended by AEDPA and IIRIRA, Apply to Bradshaw**

In his habeas petition, Bradshaw claims that when he arrived in the United States in 1964, he had a different "contractual agreement with the I.N.S." as related to his "convictions and removal from the U.S. soil," such that 1996 amendments to the INA should not have any bearing on him. Petition, at 3. Although Bradshaw does not cite to the 1996

---

shall apply to individuals who satisfy the requirements of section 320 or 322 of the Immigration and Nationality Act, as in effect on such effective date.

Child Citizenship Act of 2000, §104, Pub. L. No. 106-395, 114 Stat. 1631 (Oct. 30, 2000).

[3] Bradshaw actually claims to have arrived in the United States in 1965 but the underlying immigration proceedings established that Bradshaw arrived in the United States on December 20, 1964.

8

amendments, Bradshaw is referring to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996).

Presumably, Bradshaw is raising a retroactivity or an ex post facto type of claim and is arguing that the crime he committed in Vermont in 1997 would not have caused him to be removed from the United States in 1964. Regardless of the type of claim he means to raise, his argument has no merit. See Collins v. Youngblood, 497 U.S. 37, 41 (1990)("Although the Latin phrase "ex post facto" literally encompasses any law passed "after the fact," it has long been recognized by this Court that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them."); Breed v. Jones, 421 U.S. 519, 528 (1975); Galvan v. Press, 347 U.S. 522, 531 (1954); DeSousa v. Reno, 190 F.3d 175, 185-87 (3rd Cir. 1999)(Congress can constitutionally expand the definition of "aggravated felony" to encompass a greater variety of crimes that would make an alien deportable); United States v. Yacoubian, 24 F.3d 1, 9-10 (9th Cir. 1994)(Congress has the power to expel aliens and can always change its minds for the grounds for removing aliens); Scheidemann v. INS, 83 F.3d 1517 (3rd Cir. 1996).

In DeSousa, the alien would have been eligible to apply for 212(c) relief at the time of his most recent conviction. By the time deportation proceedings had been initiated, however, DeSousa was precluded from seeking such relief due to changes made by AEDPA. Although the alien argued that the amended 212(c) should not apply to him because his conviction predated AEDPA, the Third Circuit held that amendments made by AEDPA did not have an unconstitutional retroactive effect.

Thus, although Bradshaw may believe it to be unfair for Congress to have changed its policy in determining what types of aliens it wants remaining in the United States, Congress **can** change its policies and **can** constitutionally require any alien having been convicted of an aggravated felony to leave the United States. As such, the 1996 amendments to the INA made by AEDPA and IIRIRA properly apply to Bradshaw and his removal proceedings. See DeSousa, supra; Scheidemann, supra.

### 3.  The Final Order of Removal is Valid

The only specific argument Bradshaw makes as to his final order of removal being invalid is his assertion that the Burlington, Vermont police did not advise him of his consular rights under the Vienna Convention when he was arrested for the criminal charge that ultimately lead to his order of removal.

10

Petition, at 3. Habeas jurisdiction,[4] however, does not extend to a collateral attack on a conviction that supports a final immigration order of removal. See Contreras v. Schiltgen, 151 F.3d 906, 907 (9th Cir. 1998); Palmer v. Immigration and Naturalization Service, 4 F.3d 482, 489 (7th Cir. 1993); Trench v. INS, 783 F.2d 181, 184 (10th Cir. 1986); Zinnanti v. INS, 651 F.2d 420, 421 (5th Cir. 1981); Chiaramonte v. INS, 626 F.2d 1093, 1098 (2nd Cir. 1980)(foreign conviction cannot be challenged). The Supreme Court's recent decisions issued this term likewise compel this conclusion. See Daniels v. United States, ___ U.S. ___, 121 S.Ct. 1578 (2001)(except for a Gideon claim, federal habeas does not lie to collaterally attack an expired conviction that supports current custody); Lackawanna County District Attorney v. Coss, ___ U.S. ___, 121 S.Ct. 1567 (2001)(same).

Thus, Bradshaw cannot collaterally challenge his criminal conviction in this habeas petition challenging an immigration order of removal.

---

[4] Under Liang v. INS, 206 F.3d 308 (3rd Cir. 2000), district courts generally possesses jurisdiction over habeas petitions filed by criminal aliens, such as Bradford. Id. at 318. The Supreme Court, however, is currently considering whether the INA precludes federal district courts from considering habeas petitions that seek review of removal orders. See Calcano-Martinez v. INS, No. 01-1011 2001 WL 29105 (U.S. Jan. 12, 2001).

4. <u>**Not Having Raised It Below, Bradford Cannot Raise a Vienna Convention "Consular Notification" Claim Now.**</u>

In addition to making a Vienna Convention "consular notification" claim to presumably challenge his criminal conviction, Bradford claims that the INS did not notify him of his right to contact his consulate. Petition, at 3. Besides failing to make any argument as to how this alleged violation prejudiced him, we note that Bradford did not raise this argument anywhere in the immigration proceedings. As such, the claim should be dismissed for failure to exhaust.

The Supreme Court has long acknowledged the rule that parties must exhaust prescribed administrative remedies before seeking relief from the federal courts. <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144-45 (1992)(citing <u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41, 50-51, & n.9 (1938)(collecting cases)); <u>McKart v. United States</u>, 395 U.S. 185, 193 (1969). It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." <u>Myers</u>, 303 U.S. at 50-51. The <u>McCarthy</u> rule applies "with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." 503 U.S. at 144-45.

Here, the immigration court system used to adjudicate claims between the INS and aliens consists of using immigration

12

judges to hold hearings and issue rulings. Appeals are then taken by the dissatisfied party to the BIA. This system is quite similar to the district court/court of appeals system used in each federal circuit, with various rules governing jurisdiction, time limits, and the like. See 8 C.F.R. §§3.0-3.65 (delineating organizational structure and procedural rules governing the Board of Immigration Appeals and the Immigration Court). Undoubtedly, the BIA has special expertise in removal cases that should be applied before a court reviews the matter. See Yi v. Maugans, 24 F.3d 500, 502-3 (3rd Cir. 1994).

Indeed, Congress has mandated that in immigration proceedings an alien first exhaust his administrative remedies before a court can review a final order of removal. See 8 U.S.C. §1252(d)("A court may review a final order of removal only if -- (1) the alien has exhausted all administrative remedies available to the alien as of right, ...."). This statutory provision is consistent with prior case law requiring exhaustion in immigration cases, with dismissal of the habeas corpus case being the appropriate remedy if an alien has not exhausted his remedies before the immigration courts. See United States v. Sing Tuck, 194 U.S. 161, 168-70 (1904)(exhaustion required before seeking relief via habeas corpus); Ghalamsiah v. INS, 806 F.2d 68 (3rd Cir. 1986); Sanders v. Arnold, 535 F.2d 848 (3rd Cir. 1976); Arias v. Rogers, 676 F.2d 1139, 1143 (7th Cir. 1982).

Thus, because Bradshaw did not raise his "consulate notification" claim before the immigration courts, he cannot raise it now in his habeas petition.

### 5. Bradshaw's Remaining Claims Lack Merit

The remainder of Bradshaw's claims are so vague that the INS is unable to address them. First, Bradshaw generally seeks cancellation of removal or some other form of discretionary relief. There is no discretionary relief that Bradshaw is eligible to receive, however. See 8 U.S.C. §1182(c)(repealed); 8 U.S.C. §1229b(a)(3)(prohibiting cancellation of removal for aliens convicted of an aggravated felony); 8 U.S.C. §1231(b)(3) & 8 C.F.R. §208.16 (withholding of removal available only if alien proves that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion).[5]

As to Bradshaw's vague allegation of the existence of unconstitutional laws, Petition, at 2, Bradshaw has failed to provide any information or otherwise alleged any facts to address his claim. As such, Bradshaw's conclusory assertion of unconstitutional statutes or the violation of his constitutional rights should be dismissed.

---

[5] At that, the first country of removal is the Netherlands, with Guyana being an alternative country. Thus, any perceived fear of persecution in Guyana relevant to the issues of withholding of removal and asylum, besides being utterly unsupported by any evidence submitted by Bradshaw, may never come into play.

14

## CONCLUSION

For the above-stated reasons, Bradshaw's detention is authorized by law and the writ of habeas corpus should be denied.

    Respectfully submitted,

    MARTIN C. CARLSON
    United States Attorney

    */s/ Kate L. Mershimer*
    *+ Mark E. Morrison*
    KATE L. MERSHIMER
    Assistant U.S. Attorney
    MARK E. MORRISON
    Assistant U.S. Attorney
    228 Walnut Street, 2nd Floor
    P.O. Box 11754
    Harrisburg, PA   17108-1754
    717/221-4482

Date:   May 24, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SYDNEY BRADSHAW,  :
    Petitioner  :  No. 1:CV-01-0756
  :
v.  :  (Judge Caldwell)
  :
IMMIGRATION AND NATURALIZATION  :
SERVICE,  :
    Respondent  :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 24th day of May, 2001, she served a copy of the attached

**RESPONSE TO THE WRIT OF HABEAS CORPUS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Sydney Bradshaw, #60086
York County Prison
3400 Concord Road
York, PA  17402

*Becky Plesic*
BECKY PLESIC
Legal Secretary