**ORIGINAL** See Attachment

UNITED STATES DISTRICT COURT FOR
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYDNEY I. BRADSHAW, | : | |
| Petitioner | : | CIVIL NO. 1:CV-01-0756 |
| v. | : | (Judge Caldwell) |
| IMMIGRATION AND NATURALIZATION SERVICE, | : | |
| Respondent | : | |

FILED
HARRISBURG, PA

FEB 22 2002

MARY E. D'ANDREA, CLERK
Per _____

MEMORANDUM

I. Introduction.

Sydney I. Bradshaw, an inmate formerly confined at the York County Prison, York, Pennsylvania, initiated this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Named as respondent is the Immigrations and Naturalization Service ("INS"). Petitioner is a citizen of Guyana subject to a final order of removal as an aggravated felon.

The petition challenges Bradshaw's removal on two grounds. First, he has derivative citizenship through the Child Citizenship Act of 2000. Second, changes in immigration law after his admission to the United States do not apply to him. Bradshaw also raised other grounds against his deportation, including a constitutional challenge to the version of 8 U.S.C. § 1432, dealing with derivative citizenship, applicable to him.

---

[1] After he filed this action, Bradshaw was transferred to the Montgomery County Correctional Facility.

Certified from the record
Date 2/22/02
Mary E. D'Andrea, Clerk

For the reasons which follow, we will deny the petition.

II. Background.

Bradshaw, born April 15, 1953, in Guyana entered the United States with his parents, in 1965, as a lawful permanent resident. Bradshaw's parents never divorced or legally separated. Bradshaw's mother became a naturalized citizen on December 2, 1969, while Bradshaw's father was not naturalized until petitioner turned 24.

On February 9, 1998, Bradshaw pled nolo contendere to a charge of aggravated assault in Vermont. He received an eight-month to four-year sentence. In June 1998, the INS initiated removal proceedings against him based on this felony conviction.

The proceedings were continued four times to allow Bradshaw to obtain counsel and gather, collect and present evidence with respect to the status of his criminal convictions and claim of derivative citizenship. During the course of these proceedings, Bradshaw admitted that he was not a citizen or national of the United States and that he did not fear persecution if returned to his homeland.

At the conclusion of the hearing the immigration judge ruled that Bradshaw was not a citizen or national of the United States (as conceded by Bradshaw), but a native and citizen of Guyana, who was subject to removal due to his aggravated assault conviction. On September 15, 1998, the immigration judge issued an order of removal against Bradshaw. After appealing the order of removal to

the Board of Immigration Appeals ("BIA"), on June 23, 1999, the BIA upheld the immigration judge's order.

Before us is Bradshaw's habeas corpus petition. Since filing his petition, Bradshaw applied for a certificate of citizenship which was denied on May 16, 2001. See doc. 11.

III. Discussion.

  A.  Derivative Citizenship

Bradshaw argues he is a citizen of the United States and thus his detention and deportation at the hands of the INS is illegal. Bradshaw has suggested several, sometimes inconsistent, statutory sources of his derivative citizenship. First, Bradshaw argues he obtained derivative citizenship pursuant to the Child Citizen Act of 2000 ("CCA"), PL 106-395, 114 Stat. 1631 (October 30, 2000). In opposition, Respondent contends the CCA, effective February 27, 2001, does not grant Bradshaw derivative citizenship because he is too old to benefit from it. We agree.

In pertinent part, the Child Citizenship Act of 2000 ("CCA") amended 8 U.S.C. § 1431, INA § 320, so that it now reads:

> (a) A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
>
> (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.

-3-

>    (2) The child is under the age of eighteen years.
>
>    (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

Section 104 of the CCA provides the final requirement to be met by candidates seeking derivative citizenship through the CCA: "The amendments made by this title [amending this section and section 1433 of this title and repealing section 1432 of this title] shall take effect 120 days after the date of the enactment of this Act [Oct. 30, 2000] and shall apply to individuals who satisfy the requirements of section 320 or 322 of the Immigration and Nationality Act [this section and section 1433 of this title], on such effective date."  Child Citizenship Act of 2000, § 104.

Because the CCA became effective on February 27, 2001, 120 days after the date of enactment, Bradshaw cannot meet its requirements.  Bradshaw's mother did become a naturalized United States citizen when he was a minor, and he did come to this country at the age of eleven as a lawful resident alien in the legal and physical custody of his parents.  However, on the effective date of the CCA, February 27, 2001, Bradshaw was 47 years old and thus clearly did not meet the age requirement.  Thus, Bradshaw cannot obtain derivative United States citizenship from the CCA.

Nor can Bradshaw argue that the CCA is retroactive, conferring derivative citizenship because he met its requirements before it was passed.  This interpretation of the CCA's effective-date

-4-

provision has been rejected by the courts.  Nehme v. INS, 252 F.3d 415, 431-32 (5th Cir. 2001); Hughes v. Ashcroft, 255 F.3d 752, 758-60 (9th Cir. 2001); Baresic v. Ashcroft, 2002 WL 84621 (N.D. Ill).

Long after Petitioner's submission of a traverse to Respondent's response, Bradshaw argued another theory of derivative citizenship.  He contends that 8 U.S.C. § 1432, INA § 321 (repealed by the CCA), did not apply to him as he was born in 1953, before the 1986 amendments to section 1432.[2]  (See Doc. 13).  In opposition, Respondent maintains that the repealed law was not limited to individuals born after 1986.  In the absence of anything within the statute itself setting forth such a limitation, we reject Bradshaw's argument.

---

[2] Before it was repealed, section 1432 provided as follows:

    A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions:

(1)  The naturalization of both parents;  or
(2)  The naturalization of the surviving parent if one of the parents is deceased;  or
(3)  The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation;  and
(4)  Such naturalization takes place while such child is under the age of eighteen years;  and
(5)  Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized ..., or thereafter begins to reside permanently in the United States while under the age of eighteen years....

8 U.S.C. § 1432 (repealed).

Bradshaw has filed an amended complaint, doc. 20, arguing that section 1432 violates his right to equal protection as it discriminates against him based on the marital status of his parents. Bradshaw maintains that in 1965 when he entered the United States, a fatherless alien child whose single mother was naturalized would obtain derivative citizenship via INA § 321, while Bradshaw could not when his married mother was naturalized.

We reject this claim. The Supreme Court has long acknowledged that Congress's discretion over the admission or expulsion of aliens "is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control" and that "judicial review of INS decisions is a matter limited by the authority Congress retains over immigration matters." Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953); Fiallo v. Bell, 430 U.S. 787 (1977)(interpreting a previous version of § 321 and concluding that it was not for the Court to probe and test the justifications for a legislative decision on immigration matters so long as the justifications appeared to be rationally based).

When tracing the history of the laws granting derivative citizenship to minor alien children, Bradshaw is correct in noting that in 1940 Congress made a "fundamental change" in the statutes governing derivative citizenship. The Nationality Act of 1940, which Bradshaw cites, was a significant departure from Congress's previous stance which granted derivative citizenship to minor

children when only one parent was naturalized. That Act provided that if the parents of an alien child were married, they both had to be naturalized before the child reached majority in order for the child to receive derivative citizenship. Other courts examining this issue have noted that this change was Congress's attempt to reduce the problems created due to the occurrences of dual citizenship - "to ensure that only those alien children whose 'real interests' were located in America with their custodial parents, and not abroad, should be automatically naturalized." Nehme, supra, 252 F.3d at 425. Thus, the distinction is rational and does not violate equal protection. See Fiallo, supra, 430 U.S. at 798-99; Charles v. Reno, 117 F. Supp. 2d 412 (D. N.J. 2000).

B. Retroactivity of Changes in Immigration Laws Since Bradshaw's Admission in 1967.

In the petition's second "argument," Bradshaw alleges that his mother "signed a different contractual agreement with the I.N.S. as far as the stipulations about convictions and removal from the U.S. Soil" and suggests therefore, that the new INA provisions do not apply to him. (Doc. 1, p. 3). Bradshaw appears to suggest that he would not have been deportable based upon his 1997 conviction for aggravated assault back in 1967 because of this contract. Bradshaw's claim is that the application of the Antiterrorism and Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which were both enacted

-7-

in 1996, somehow violates his ex post facto rights. He is mistaken.[3]

"The prohibition against *ex post facto* laws does not apply to deportation proceedings, which are 'purely civil action[s] to determine eligibility to remain in this country, not to punish.... The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain.'" Scheidemann v. INS, 83 F.3d 1517, 1521 (3d Cir. 1996), quoting INS v. Lopez-Mendoza, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984). The purpose for the clause, as articulated by the Supreme Court, is to prohibit "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." California Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995). With respect to Bradshaw, there is no ex post facto violation. Bradshaw pled nolo contendere in 1998 to a charge of aggravated assault. His criminal sentence is not affected by the change in immigration laws affecting his privilege as an alien to remain in this country. His deportation

---

[3] To the extent that Bradshaw is attempting to claim the application of the AEDPA has an impermissible retroactive effect on him because he is now precluded from seeking a discretionary waiver of inadmissibility from the Attorney General for his criminal convictions, he is mistaken. In DeSousa v. Reno, 190 F.3d 175 (3d Cir. 1999), the Third Circuit held that section 212(c) as amended does not have an impermissible retroactive effect. Id. at 187. Regardless, Bradshaw was convicted of aggravated assault after the passage of the AEDPA and IIRIRA, not before.

as an aggravated felon is a collateral civil consequence of his criminal conviction, not a criminal punishment in addition to the sanction imposed by the Vermont court.

We will issue an appropriate order denying the habeas petition.

/s/ William W. Caldwell
WILLIAM W. CALDWELL
United States District Judge

Date: February 22, 2002

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SYDNEY I. BRADSHAW,               :
                                  :
          Petitioner              :   CIVIL NO. 1:CV-01-0756
                                  :
     v.                           :   (Judge Caldwell)
                                  :
IMMIGRATION AND                   :
NATURALIZATION SERVICE,           :
                                  :
          Respondent              :

O R D E R

AND NOW, this 22nd day of February, 2002, for the reasons set forth in the accompanying memorandum, it is ordered that:

1. The petition for writ of habeas corpus (doc. 1) is denied.

2. All pending discovery motions in this matter (docs. 18 and 19) are dismissed as moot.

3. The Clerk of Court is directed to close the case.

                    /s/ William W. Caldwell
                    _____
                    WILLIAM W. CALDWELL
                    United States District Judge

Certified from the record
Date 2-22-02
Mary E. D'Andrea, Clerk
Per _____
    Deputy Clerk